No. 23-cr-00453-NYW-MEH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHRISTOPHER J. CORDOVA,

      Defendant-Appellant.

---

## RESPONSE BRIEF OF THE UNITED STATES

---

On Appeal from United States Magistrate Judge
for the District of Colorado
The Honorable Michael E. Hegarty
No. 22-po-07015-MEH

---

Cole Finegan
United States Attorney

*s/ Jess D. Mekeel*
Jess D. Mekeel
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0408
E-mail: Jess.Mekeel@usdoj.gov

Counsel for Plaintiff-Appellee
United States of America

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF JURISDICTION ................................................................................... 1

STATEMENT OF THE ISSUES ........................................................................................ 1

STATEMENT OF THE CASE AND FACTS ..................................................................... 2

I.   The SSA occupies the entire building, and signage on the doors leading to the vestibule and then the interior office space clearly prohibit filming............................ 2

II.  Cordova films in the interior office space despite the prohibition. ............................. 3

III. Cordova is convicted of failing to comply with signs and directives (§ 102-74.385) and unauthorized photography (§ 102-74.420) on federal property. .......................... 4

SUMMARY OF ARGUMENTS ......................................................................................... 4

ARGUMENTS .................................................................................................................... 5

I.   Viewed in the light most favorable to the government, the evidence was more than sufficient to convict Cordova of violating § 102-74.420. ............................................ 5

II.  Cordova failed to preserve his due process sentencing claim and has not shown the magistrate judge plainly erred by considering pending charges. ............................... 9

III. Section 102-74.420 is a viewpoint neutral, reasonable restriction governing a nonpublic forum and, thus, does not violate the First Amendment........................... 12

IV. Because Cordova's filming was prohibited by security rules, orders, and directives, the Court does not need to decide whether § 102-74.420 is unconstitutionally vague. In any event, the regulation is not vague, particularly given that Cordova knew he would be arrested. ................................................................................................. 16

CONCLUSION ................................................................................................................. 19

CERTIFICATE OF SERVICE ......................................................................................... 20

## TABLE OF AUTHORITIES

### Federal Cases

*Americans for Prosperity Found. v. Bonta*,
  141 S. Ct. 2373 (2021) .............................................................................. 13

*Andersen v. Dir., Off. of Workers' Comp. Programs*,
  455 F.3d 1102 (10th Cir. 2006) ................................................................. 5

*Askins v. U.S. Dep't of Homeland Sec.*,
  No. 12-cv-2600 W, 2015 WL 12434362 (S.D. Cal. Jan. 29, 2015) *vacated and
  remanded on other grounds*, 899 F.3d 1035 (9th Cir. 2018). ..................... 16

*Doe v. City of Albuquerque*,
  667 F.3d 1111 (10th Cir. 2012) ................................................................. 13

*Flores v. Astrue*,
  246 F. App'x 540 (10th Cir. 2007) ............................................................ 11

*Frank v. Lee*,
  84 F.4th 1119 (10th Cir. 2023) ................................................................. 12

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) .................................................................................. 17

*Green v. Haskell Cnty. Bd. of Comm'rs*,
  568 F.3d 784 (10th Cir. 2009) .................................................................. 12

*Hawkins v. City & Cnty. of Denver*,
  170 F.3d 1281 (10th Cir. 1999) .............................................. 12, 13, 14, 15

*Hejira Corp. v. MacFarlane*,
  660 F.2d 1356 (10th Cir. 1981) ................................................................ 19

*Jackson v. Virginia*,
  443 U.S. 307 (1979) .................................................................................... 5

*Kolender v. Lawson*,
  461 U.S. 352 (1983) .................................................................................. 17

*MacArthur v. San Juan Cnty.*,
  495 F.3d 1157 (10th Cir. 2007) ................................................................ 12

*Make the Road by Walking, Inc. v. Turner*,
  378 F.3d 133, 137 (2d Cir. 2004) ............................................................. 13

*Minnesota Voters All. v. Mansky*,
    585 U.S. 1 (2018) ........................................................................ 14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ........................................................................ 15

*Preminger v. Sec'y of Veterans*,
    Affs., 517 F.3d 1299 (Fed. Cir. 2008) ........................................... 13

*Sandberg v. Englewood*,
    No. 16-CV-01094-CMA-KMT, 2017 WL 1148691 (D. Colo. Mar. 27, 2017)
    *aff'd in part and rev'd in part on other grounds*, 727 F. App'x 950 (10th Cir. 2018)..... 13

*StreetMediaGroup, LLC v. Stockinger*,
    79 F.4th 1243 (10th Cir. 2023)................................................ 18, 19

*United Staes v. Gonzales*,
    150 F.3d 1246 (10th Cir. 1998)...................................................... 17

*United States v. Anderson*,
    62 F.4th 1260 (10th Cir. 2023)...................................................... 12

*United States v. Baldwin*,
    745 F.3d 1027 (10th Cir. 2014)...................................................... 17

*United States v. Cassiagnol*,
    420 F.3d 868 (4th Cir. 1970)................................................... 14, 15

*United States v. Fernandez*,
    24 F.4th 1321 (10th Cir. 2022)........................................................ 5

*United States v. Gileno*,
    350 F. Supp. 3d 910 (C.D. Cal. 2018) ........................................... 14

*United States v. Gonzalez-Huerta*,
    403 F.3d 727 (10th Cir. 2005)........................................................ 11

*United States v. Gordon*,
    710 F.3d 1124 (10th Cir. 2013)........................................................ 6

*United States v. Guinn*,
    89 F.4th 838 (10th Cir. 2023)......................................................... 10

*United States v. Kokinda*,
    497 U.S. 720 (1990)............................................................... 13, 15

*United States v. Lente*,
    759 F.3d 1149 (10th Cir. 2014)...................................................... 11

*United States v. Linares,*
    60 F.4th 1244 (10th Cir. 2023) ......................................................... 6, 16

*United States v. Lujan,*
    603 F.3d 850 (10th Cir. 2010) .............................................................. 12

*United States v. McBride,*
    94 F.4th 1036 (10th Cir. 2024) ............................................................. 12

*United States v. Mobley,*
    971 F.3d 1187 (10th Cir. 2020) .............................................................. 6

*United States v. Muskett,*
    970 F.3d 1233 (10th Cir. 2020) ............................................................. 19

*United States v. Otuonye,*
    995 F.3d 1191 (10th Cir. 2021) ............................................................. 10

*United States v. Platte,*
    401 F.3d 1176 (10th Cir. 2005) ............................................................. 18

*United States v. Rodebaugh,*
    798 F.3d 1281 (10th Cir. 2015) ............................................................. 16

*United States v. Solomon,*
    95 F.3d 33 (10th Cir. 1996) .................................................................. 19

*United States v. Stansell,*
    847 F.2d 609 (9th Cir. 1988) .......................................................... 14, 15

*United States v. Zamora,*
    97 F.4th 1202 (10th Cir. 2024) ......................................................... 7, 16

*Waters v. Churchill,*
    511 U.S. 661 (1994) ............................................................................ 15

*Williams v. Henderson,*
    626 F. App'x 761 (10th Cir. 2015) ......................................................... 13

*Wyoming Gun Owners v. Gray,*
    83 F.4th 1224 (10th Cir. 2023) .............................................................. 9

## Federal Statutes, Regulations, & Rules

18 U.S.C. § 3401(a) ..................................................................................... 1

18 U.S.C. § 3402 ......................................................................................... 1

18 U.S.C. § 3661 ....................................................................................... 11

iv

18 U.S.C. § 3553(a) ......................................................................................... 11

18 U.S.C. § 3559(a)(8) ...................................................................................... 4

18 U.S.C. § 3571(b)(6) ...................................................................................... 4

28 U.S.C. § 636(a)(3)-(4) .................................................................................. 1

38 C.F.R. § 1.218(10) ...................................................................................... 18

39 C.F.R. § 232.1(i) ......................................................................................... 18

40 U.S.C. § 1315(c).......................................................................................... 4

41 C.F.R. § 101-19.308 (1969) ....................................................................... 15

41 C.F.R. § 102-74.385 ............................................................................ 4, 6, 7

41 C.F.R. § 102-74.420 ................................................. 1, 3, 4, 5, 6, 8, 12, 14, 15, 16, 19

41 C.F.R. § 102-74.450 ...................................................................................... 4

41 C.F.R. § 102-74.10 ..................................................................................... 14

46 C.F.R. § 386.17 .......................................................................................... 18

Fed. R. App. P. 28(a)(8)(B)............................................................................ 12

Fed. R. Crim. P. 32(i)(3)(B)......................................................................... 9, 10

Fed. R. Crim. P. 58(a)(1) .................................................................................. 9

Fed. R. Crim. P. 58(g)(2)(B) ............................................................................ 1

Fed. R. Crim. P. 58(g)(2)(D) ............................................................................ 1

Fed. R. Evid. 1101(d)(3) ................................................................................. 11

## State Regulations

D.C. Mun. Regs. Tit. 1, § 1417 ....................................................................... 18

N.M. Admin. Code 1.5.24.20 ........................................................................... 18

**Other Authorities**

Soc. Sec. Admin., Program Operations Manual System GN 03360.010 (2010) at
https://secure.ssa. gov/poms.nsf/lnx/0203360010 ...................................................... 7

U.S. Dep't of Homeland Sec., Operational Readiness Order HQ-ORO-002-2018 at 2-3
(2018), at https://www.dhs.gov/publication/operational-readiness-order-photography-
and-videotaping-federal-facilities ................................................................................. 7

## STATEMENT OF JURISDICTION

The magistrate judge had jurisdiction under 18 U.S.C. § 3401(a) and 28 U.S.C. § 636(a)(3)-(4). Judgment was entered and Cordova timely appealed. Docs. 36, 38; Fed. R. Crim. P. 58(g)(2)(B).[1] This Court has jurisdiction under 18 U.S.C. § 3402. This Court reviews the magistrate judge's decision in the same way that the court of appeals would review a decision of this Court. *See* Fed. R. Crim. P. 58(g)(2)(D).

## STATEMENT OF THE ISSUES

1.     Was Cordova's conviction under 41 C.F.R. § 102-74.420 supported by sufficient evidence when he filmed in violation of "security regulations, rules, orders, or directives" and in a space occupied by a tenant agency without the agency's permission?

2.     Did Cordova waive his due process challenge to his sentence premised on the magistrate judge's consideration of pending state charges? Alternatively, has Cordova shown plain error where there is no evidence the judge considered the pending charges and settled law shows that it would have been permissible for him to do so?

3.     Is § 102-74.420 facially unconstitutional under the First Amendment when Cordova concedes the forum is nonpublic and the record confirms that the photography restriction is reasonable in light of the purposes served by the forum?

4.     Should the Court rule on Cordova's vagueness challenge when the language at issue is not necessary for his conviction? Alternatively, is § 102-74.420 vague in

---

[1] The record, including transcripts, are cited by docket entry and page number. Exhibits are cited by party and trial phase, *e.g.*, Gov't Sent'g Ex. 23-1 is the video included with the government's sentencing statement. *See* Docs. 44, 46, 53-54.

violation of due process when the unchallenged findings confirm Cordova had fair notice that his conduct was criminal and the regulation is not vague?

## STATEMENT OF THE CASE AND FACTS[2]

During business hours, Christopher Cordova went to the Social Security Administration (SSA) office in Littleton, Colorado. Doc. 16 at 1. He planned to film inside and was not going to take no for an answer. Doc. 16 at 1-3; Doc. 7 at 2 ("We'll be allowed to be let in, or we are leaving in handcuffs.").

I.     **The SSA occupies the entire building, and signage on the doors leading to the vestibule and then the interior office space clearly prohibit filming.**

The SSA office is a free-standing building with the SSA as the sole tenant. Doc. 16 at 2. Its entrance is marked by glass windows and glass doors. Doc. 16 at 2. On the other side of the doors is a small, unfurnished vestibule. Doc. 16 at 2. Another set of glass windows and glass doors lead to the interior office space, where employees conduct business, customers seek assistance, and security personnel stand guard. Doc. 16 at 2. The glass in the vestibule has taped signs with official government seals, stating that photography and filming are prohibited under "Federal law and SSA policy." Doc. 16 at 2; *see also* Doc. 7 at 3 (photos). Beyond the interior doors is a stand-up sign with the official SSA seal, stating that photography and filming are prohibited. Doc. 16 at 2. The office space contains a waiting area with chairs on the left side and a desk and check-in kiosk on the right side. Doc. 16 at 2. Along the back wall are five stations,

---

[2] The underlying facts were not disputed before the magistrate judge. *See* Doc. 16 at 1. They are not disputed on appeal. *See* Doc. 47. And the record contains several videos supporting this factual summary. *See* Gov't Trial Exs. 1, 3; Gov't Sent'g Ex. 23-1.

marked A-E and separated by partial walls, at which customers can speak confidentially with SSA employees behind windows. Doc. 16 at 2.

## II.   Cordova films in the interior office space despite the prohibition.

Cordova began filming in the vestibule even though the security guards told him it was prohibited and to either cease filming or leave the building. Doc. 16 at 2. He refused, and the guards sought back-up, at which point local police and inspectors with the Department of Homeland's Federal Protective Service arrived. Gov't Trial Ex. 1 at 53:35. For nearly three hours, Cordova and his associates remained in the vestibule, filmed the office space through the glass, and taunted the guards. Gov't Trial Ex. 1; Doc. 16 at 2. Dozens of customers entered and exited the building. Gov't Trial Ex. 1; Doc. 16 at 2. Still, officers did not impede Cordova's filming or his monologuing as he livestreamed on his YouTube channel. Doc. 16 at 2. Cordova also thanked viewers for donations and encouraged them to subscribe to his channel. *See* Doc. 23 at 4.

Eventually, the FPS Commander told Cordova that the building manager would permit filming in the vestibule, even though the area ordinarily was considered secured and subject to the filming prohibition. Gov't Trial Ex. at 01:59:23. This did not appease Cordova, who expressed his intent to film in the office space beyond the glass doors. Doc. 16 at 2. The FPS Commander stated that such filming was against federal regulations and that Cordova would be arrested. Doc. 16 at 2-3. The FPS Commander also gave Cordova a copy of the relevant regulations, with 41 C.F.R. § 102-74.420 highlighted. Doc. 16 at 3; Gov't Trial Ex. 14. Cordova already knew the regulation. Doc. 16 at 3. Shortly before the office closed, Cordova entered the interior office space while

filming and monologuing. Doc. 16 at 3; Gov't Trial Ex. 1 at 03:14:20. He was promptly arrested. Doc. 16 at 3; Doc. 1.

## III. Cordova is convicted of failing to comply with signs and directives (§ 102-74.385) and unauthorized photography (§ 102-74.420) on federal property.

The government charged Cordova with violating two regulations concerning conduct on federal property managed by the General Services Administration: (1) failing to comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal police officers and other authorized individuals, under § 102-74.385; and (2) taking photographs and video in violation of security regulations, rules, orders, and directives and of space occupied by a tenant agency without the agency's permission, under § 102-74.420. Doc. 3. Each violation carried up to a thirty-day sentence and $5,000 fine. 18 U.S.C. §§ 3559(a)(8), 3571(b)(6); 40 U.S.C. § 1315(c); 41 C.F.R. § 102-74.450.

Cordova moved to dismiss, arguing that § 102-74.420 violated the First Amendment and was void for vagueness. Doc. 5. The magistrate judge denied the motion. Doc. 9. Following a trial, the judge found Cordova guilty. Doc. 16 at 4-7. The judge sentenced him to fifteen days' imprisonment on the § 102-74.385 conviction and two years' probation on the § 102-74.420 conviction, along with a $3,000 fine. Doc. 36.

## SUMMARY OF ARGUMENTS

The evidence fully supported Cordova's conviction under § 102-74.420. He filmed both in violation of "security regulations, rules, orders, or directives" and in a "[s]pace occupied by a tenant agency" (the SSA) without the agency's permission.

By failing to object to the magistrate judge's consideration of pending state charges during sentencing and not arguing plain error on appeal, Cordova has waived

his due process challenge to his sentence. Nor has he satisfied the rigorous test for plain error. The law permits a judge to consider such charges during sentencing but, even if it did not, there is no evidence the judge considered such charges here.

Section 102-74.420 is not facially unconstitutional under the First Amendment. It imposes a viewpoint-neutral and reasonable restriction on a nonpublic forum.

Lastly, the Court need not address Cordova's vagueness challenge. His conviction does not depend on the regulatory language at issue. In any event, § 102-74.420 is not vague in violation of due process because the unchallenged findings confirm Cordova had fair notice and because the regulation itself is not vague.

## ARGUMENTS

### I. Viewed in the light most favorable to the government, the evidence was more than sufficient to convict Cordova of violating § 102-74.420.

**Preservation:** After the government rested, Cordova moved for a judgment of acquittal. Doc. 47-1 at 52-66. The magistrate judge reserved ruling. Doc. 47-1 at 67, 104. The judge later found Cordova guilty beyond a reasonable doubt. Doc. 16 at 5.

**Standard of Review:** Cordova's sufficiency claim is reviewed novo. *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022). The Court asks only "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Cordova also raises an issue of regulatory interpretation, which is reviewed de novo. *Andersen v. Dir., Off. of Workers' Comp. Programs*, 455 F.3d 1102, 1103 (10th Cir. 2006). Factual findings are reviewed for clear error, which occurs if a finding lacks any support or the Court has

a definite and firm conviction a mistake was made. *United States v. Linares*, 60 F.4th 1244, 1247 (10th Cir. 2023).

**Discussion:** Cordova contends his conviction for unauthorized photography under § 102-74.420 was not supported by sufficient evidence.[3] But he gives short shrift to this issue. Doc. 47 at 8. So the Court may deem the argument waived. *See United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013). In any event, the argument fails.

Section 102-74.420 limits photography on federal property to certain situations:

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of—
>
> (a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> (b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> (c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

First, all photography on federal property is forbidden where prohibited by "security regulations, rules, orders, or directives or a Federal court order or rule." § 102-74.420. Second, photography of "[s]pace occupied by a tenant agency" is forbidden without permission. *Id.* § 102-74.420(a)-(b). Finally, subject to the security exception, photography of "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums" is permitted "for news purposes" *Id.* § 102-74.420(c).

---

[3] Cordova does not challenge his conviction under § 102-74.385. So that conviction is not before the Court. *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020).

Because it is undisputed that Cordova filmed in violation of security rules, orders, and directives, this Court may affirm without deciding whether the space where Cordova filmed was covered by subsections (a)-(b) as the magistrate judge found or by subsection (c) as argued by Cordova. *See United States v. Zamora*, 97 F.4th 1202, 1213 (10th Cir. 2024) (noting court may affirm on any grounds supported by the record).

As the government explained, "Cordova saw four signs prohibiting live streams. He ignored those signs, as he planned to do all along." Doc. 47-1 at 6. Cordova has not disputed that he failed to comply with those official signs under § 102-74.385. And the testimony established that those signs were, in fact, "security" signs. Doc. 47-1 at 30, 44 (FPS Commander testifying that the SSA has several categories of signs, including "occupational signage, directional signage, [and] security signage," and that the signs prohibiting photography were "security signage"). Uniformed personnel, both security guards and DHS inspectors, issued verbal "directives" to comply with those security signs, which Cordova rejected. *E.g.*, Gov't Trial Ex. 1 at 2:13:38, 2:14:12. When a guard pointed to and read one sign, Cordova retorted that the sign was "just a piece of paper" and that he did not have to comply with policies. Gov't Trial Ex. at 06:01.[4] Cordova thus filmed in violation of security rules, orders, and directives. So the conviction must stand.

---

[4] Notably, Cordova repeatedly referenced a 2018 DHS memo as supporting his right to video inside the SSA's office. *E.g.*, Gov't Trial Ex. 1 03:09, 22:40. That memo, although not introduced into evidence, notes that SSA *has* security rules prohibiting photography. U.S. Dep't of Homeland Sec., Operational Readiness Order HQ-ORO-002-2018 at 2-3 (2018), at https://www.dhs.gov/publication/operational-readiness-order-photography-and-videotaping-federal-facilities; *see also* Soc. Sec. Admin., Program Operations Manual System GN 03360.010 (2010) (noting photography and filming are prohibited without permission), *at* https://secure.ssa. gov/poms.nsf/lnx/0203360010.

The conviction also was supported based on the location of Cordova's filming. He does not dispute that he filmed in space occupied by the SSA or that he filmed without the SSA's permission. § 102-74.420(a)-(b). Instead, Cordova insists, albeit in conclusory terms, that his filming was permitted under subsection (c) because he filmed in a lobby for news purposes. *See* Doc. 47 at 8; *see also* Doc. 47 at 13 (viewing subsection (c) as a "carve out" to subsection (a)). Irrespective of whether he was filming for news purposes, he was not filming in a lobby under subsection (c), as the magistrate judge correctly found. *See* Doc. 16 at 5-6.[5]

First, as the magistrate judge noted, a lobby is "a waiting room." Doc. 16 at 5. The area where Cordova filmed contained chairs for waiting customers, a desk, tables, a check-in kiosk, and security. If that was all, perhaps this would be a waiting room and thus a lobby. But the area also included five service windows where the agency and members of the public conducted business. Doc. 16 at 2. Upon being summoned, customers presented to those windows and did not relocate to another area to conduct their business. Doc. 16 at 2, 6.[6] Calling the SSA's interior office a waiting room, and thus a lobby, is belied by the evidence and the judge's unchallenged findings.

---

[5] Although the government disagrees with the judge's finding that the vestibule was covered by subsection (c), Doc. 16 at 6, it is sufficient that the judge found that the next area where Cordova filmed was not covered. Indeed, given the building manager's eventual consent to film in the vestibule, as communicated by the FPS Commander, it would not appear that Cordova was violating security directives by filming there and seemingly would satisfy the requirement under subsection (a) of having agency permission.

[6] By way of analogy, patients at a doctor's office check in and remain in a waiting room until summoned to an examination room. The business being conducted at the office—examination and treatment—does not occur in the waiting room itself. *See Waiting Room*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/waitingroom (last visited May 1, 2024) (defining "waiting room" as "a room (as in a doctor's office) for the use of persons (such as patients) who are waiting").

Supporting this definition is the doctrine of *noscitus a sociis*, which provides that "words grouped in a list should be given related meaning." Doc. 16 at 5 (citation omitted); *see also Wyoming Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023) (noting "a word is known by the company it keeps" (citation omitted)). Applying this doctrine, the judge surveyed the definitions of the subsection (c) spaces—entrance, lobby, foyer, corridor, and auditorium. Doc. 16 at 5-6. The judge then found that each word referred to a "space in which the public congregates but would not be engaging in individual, personal transactions." Doc. 16 at 6. Cordova was not filming in such a space. He was filming in "a typical office setting" and where "the SSA conducted its primary business of assisting the public," not a lobby. Doc. 16 at 6.

Cordova was arrested while filming in the SSA's interior office area—space occupied by a tenant agency—without the SSA's permission. That area was not a lobby as that term is used in subsection (c). Cordova's sufficiency challenge must fail.

## II.   Cordova failed to preserve his due process sentencing claim and has not shown the magistrate judge plainly erred by considering pending charges.

**Preservation:** Cordova argued at sentencing that consideration of two post-conviction arrests that had not yet been adjudicated violated due process. *See* Doc. 47-1 at 12-29. But he did not insist upon and obtain a ruling on his argument. Nor does the record indicate that the judge considered the pending charges. *See* Doc. 47-1 at 44-50. With any "controverted matter" at sentencing, including on a petty offense, the judge must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the [judge] will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B); *see also* Fed. R. Crim. P. 58(a)(1). Because

Cordova did not object under Rule 32(i)(3)(B) to the lack of a definitive ruling, he forfeited the issue. *See United States v. Otuonye*, 995 F.3d 1191, 1213 (10th Cir. 2021).

**Standard of Review:** Cordova's argument is reviewable, if at all, for plain error. He must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Guinn*, 89 F.4th 838, 848 (10th Cir. 2023) (citation omitted).

**Discussion:** Cordova contends that the magistrate judge violated his due process rights by considering two pending charges for purposes of sentencing. By not arguing plain error after forfeiting this issue, Cordova has waived it. *Otuonye*, 995 F.3d at 1213. In any event, he has not shown error, plain or otherwise.

Cordova faced up to 30 days' imprisonment and a $5,000 fine on each count. Doc. 25 at 1, 8. The government proposed community service and a $5,000 fine. Doc. 23 at 7, 10. But the day before sentencing, Cordova was arrested for conduct at a state building that mirrored his conduct at the SSA office. Doc. 23 at 1-2; Gov't Sent'g Ex. 1. Because Cordova had not been deterred, the government recommended a 20-day sentence. Doc. 26 at 1-2. By the time sentencing was held, Cordova had been arrested again. Gov't Sent'g Ex. 3. Both charges were pending at the time of sentencing here.

Cordova argues his due process rights were violated because "[h]e was subjected to more severe penalties based on conduct for which he lacked the opportunity to truly defend himself." Doc. 47 at 9. This argument fails for three reasons.

First, he was not denied the opportunity to defend himself. At the initial hearing, defense counsel argued that the pending charges could be dismissed and that the sentencing should be delayed. Doc. 58-1 at 22, 25. The judge reset the sentencing for

10

12 days after Cordova's initial appearance in state court and told counsel that he could "request to vacate" if the state cases were "still up in the air." Doc. 58-1 at 25-28. Counsel chose not to do so. Doc. 47-1 at 121 (noting first appearances had occurred). He cannot now complain that he lacked the opportunity to defend against those charges, including raising any First Amendment defenses, prior to sentencing.

Next, the government may have recommended a more severe penalty based on post-conviction arrests, but Cordova cannot show that the magistrate judge considered, let alone relied on, those arrests. The judge explained that he was not bound by the recommendation and that he had his "own decision to make." Doc. 47-1 at 18. None of his comments at the hearing suggest that he relied on the pending charges. Speculation and conjecture will not suffice for plain error. *See, e.g.*, *United States v. Gonzalez-Huerta*, 403 F.3d 727, 739-40 (10th Cir. 2005) (Tacha, J., concurring) ("[S]peculation about a possible lighter sentence cannot satisfy the third prong of plain error.").

Even if the judge considered the charges, Cordova cites no authority showing this was error. *See Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) ("A party's failure to cite any authority suggests either that there is no authority to sustain its position or that it expects the court to do its research." (citation omitted)). Nor could he.

Sentencing judges have the authority to consider a wide range of sources and types of information in determining a proper sentence. *See* 18 U.S.C. § 3661; Fed. R. Evid. 1101(d)(3). Post-conviction conduct, including criminal behavior, "may be highly relevant to several of the § 3553(a) factors . . . because it provides the most up-to-date picture of [a defendant's] history and characteristics" and potential to recidivate. *United States v. Lente*, 759 F.3d 1149, 1167 (10th Cir. 2014). It thus is well-settled that a

sentencing judge may consider uncharged, unadjudicated, and even acquitted conduct. *United States v. Lujan*, 603 F.3d 850, 856 (10th Cir. 2010) (collecting cases); *see, e.g.*, *United States v. Anderson*, 62 F.4th 1260, 1269 (10th Cir. 2023) (holding the sentencing judge was permitted to consider dismissed state charges).

Cordova's pending charges were plainly relevant to the § 3553(a) analysis. *See* Doc. 47-1 at 2-9, 42-43; *see also* Doc. 58-1 at 28-29 (warning Cordova: "[I]f you're going to appear in front of a judge for a sentencing, keeping your nose clean is a very important thing"). So the judge had the discretion to consider the charges.

III.    **Section 102-74.420 is a viewpoint neutral, reasonable restriction governing a nonpublic forum and, thus, does not violate the First Amendment.**

**Preservation:** Cordova moved to dismiss on the ground that § 102-74.420 is facially unconstitutional under the First Amendment. Doc. 5 at 4-6. The magistrate judge denied the motion. Doc. 9 at 2.

**Standard of Review:** In a First Amendment case, the Court independently examines the record. *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1285 (10th Cir. 1999). This includes reviewing "findings of constitutional fact and conclusions of law de novo." *Id.*[7] "[O]rdinary factual findings," such as "basic historical facts", are reviewed for clear error. *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 796 (10th Cir. 2009).

**Discussion:** Cordova contends that § 102-74.420 is facially unconstitutional under the First Amendment. But such a challenge is "strongly disfavored." *Frank v. Lee*, 84 F.4th 1119, 1151 (10th Cir. 2023). With "a typical facial attack, a plaintiff must

---

[7] Cordova has not stated a standard of review for this or his remaining issues. *Cf.* Fed. R. App. P. 28(a)(8)(B). It is not the Court's role "to pick out, argue for, and apply a standard of review." *United States v. McBride*, 94 F.4th 1036, 1044 (10th Cir. 2024) (citation omitted). And failing to include this "basic component of an appellate brief" can warrant dismissal. *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1161 (10th Cir. 2007).

establish that no set of circumstances exists under which the statute would be valid or that the statute lacks any plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021). With First Amendment facial challenges, a law also "may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* Cordova does not argue either standard, and it is not this Court's role to do so for him. *See Williams v. Henderson*, 626 F. App'x 761, 765-66 (10th Cir. 2015). In any event, his argument fails because he has not established *any* unconstitutional applications.

At the outset, Cordova stresses the protected nature of filming. Doc. 47 at 10. But the right to film government agents in public is not unfettered and, instead, is subject to time, place, and manner restrictions. *Sandberg v. Englewood*, No. 16-CV-01094-CMA-KMT, 2017 WL 1148691, at *5 (D. Colo. Mar. 27, 2017), *aff'd in part and rev'd in part on other grounds*, 727 F. App'x 950 (10th Cir. 2018). Thus, Cordova's challenge is governed by forum analysis. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127-28 (10th Cir. 2012). With speech restrictions on public property, the court must determine whether the location is a traditional public forum (property traditionally used for expressive activity, like a sidewalk), a designated public forum (property opened for expressive activity, like a library), or a nonpublic forum. *Id.* at 1128. The government has the greatest latitude in a nonpublic forum. *Hawkins*, 170 F.3d at 1287.

Cordova concedes that the SSA office is a nonpublic forum. Doc. 47 at 12; *cf. United States v. Kokinda*, 497 U.S. 720, 733-34 (1990) (Postal Service property); *Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1313 (Fed. Cir. 2008) (VA Medical Centers); *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 137 (2d Cir. 2004)

(welfare office). With a nonpublic forum, a speech restriction need only be viewpoint neutral and reasonable based on the forum's purpose. *Hawkins*, 170 F.3d at 1287-88, 1291. After all, "the government, no less than a private owner of property, retains the power to preserve the property under its control for the use to which it is lawfully dedicated." *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 12 (2018) (citation omitted).

Section 102-74.420 is viewpoint neutral, and Cordova does not argue otherwise. He argues only that the regulation is unreasonable because the purpose served by the forum "is unclear" as the types of properties "may be wildly different." Doc. 47 at 12.

Section 102-74.420 is limited to federal property and focuses on photography in areas occupied by agencies. The regulation is part of "a comprehensive scheme of federal property management" designed "to preserve the normal functioning of federal facilities." *United States v. Stansell*, 847 F.2d 609, 614 & n.6 (9th Cir. 1988) (listing regulations); *see, e.g.*, *United States v. Gileno*, 350 F. Supp. 3d 910, 916 (C.D. Cal. 2018) (finding § 102-74.385 to be viewpoint neutral and reasonable where defendant refused to remove camera from courthouse).

GSA requires agencies to "manage, operate and maintain Government-owned and leased buildings in a manner that provides for quality space and services consistent with their operational needs and accomplishes overall Government objectives." 41 C.F.R. § 102-74.10. Such "management, operation and maintenance" also must be "cost effective" and "adequate to meet the agencies' missions." *Id.* In short, "[t]he function exercised in relation to such property is essentially one of maintaining, operating and protecting buildings and grounds for the uses for which they have been designated." *United States v. Cassiagnol*, 420 F.2d 868, 876-77 (4th Cir. 1970). And

such "uses" are the business of federal agencies, required to "effectively and efficiently" perform delegated tasks. *Waters v. Churchill*, 511 U.S. 661, 674-75 (1994).

From the use of controlled substances to the admittance of animals, the regulatory scheme addresses myriad potentially disruptive activities in federal buildings housing agencies. *See Stansell*, 847 F.2d at 614 n.6. And regulations designed to avoid disruption to an agency's business are entirely reasonable. *See Kokinda*, 497 U.S. at 732-33 (solicitation on Postal Service property). Cordova states that filming "is silent and non-disruptive." Doc. 47 at 12. The exhibits in this case certainly paint a different picture. *See, e.g.*, Gov't Trial Ex. 1. But the government only needs to show "conceivabl[e]" interference. *Hawkins*, 170 F.3d at 1290. And allowing filming in agency space runs the risk of distracting or distressing employees and customers, increasing congestion, obstructing the exchange of information, and otherwise reducing efficiency. *See* Doc. 10 at 7.[8]

Section 102-74.420 covers a "vast number and great variety of properties entrusted to the charge and control of GSA." *Cassiagnol*, 420 F.3d at 876. But its sweep is legitimate, capable of a reasonable construction, and tailored to the forum's purpose. *Stansell*, 847 F.2d at 614. And the long history of photography restrictions on federal property occupied by agencies bolsters the reasonableness of the regulation. *See Kokinda*, 497 U.S. at 731; *see also* 41 C.F.R. § 101-19.308 (1969) (predecessor

---

[8] As specifically concerns the SSA, a filming restriction is reasonable in an area where members of the public seek help obtaining critical financial and medical benefits, which typically requires revealing confidential information and conversing with employees on highly sensitive subjects. The reasonableness is further supported by the "substantial alternative channels" for individuals and the press to gather information regarding SSA offices. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 53 (1983).

statute); *Askins v. U.S. Dep't of Homeland Sec.*, No. 12-cv-2600 W, 2015 WL 12434362, at *5-7 (S.D. Cal. Jan. 29, 2015) (detailing the regulation's history), *vacated and remanded on other grounds*, 899 F.3d 1035 (9th Cir. 2018). Thus, much like this Court's restrictions on filming in the courthouse, § 102-74.420 constitutionally restricts filming on federal property occupied by agencies. *Cf.* D.C. Colo. LCrR 57.3.

**IV.   Because Cordova's filming was prohibited by security rules, orders, and directives, the Court does not need to decide whether § 102-74.420 is unconstitutionally vague. In any event, the regulation is not vague, particularly given that Cordova knew he would be arrested.**

**Preservation:** Cordova moved to dismiss on the ground that § 102-74.420 is unconstitutionally vague in violation of due process. Doc. 5 at 4-6. The magistrate judge denied the motion. Doc. 9 at 2. Cordova re-raised the issue at trial. Doc. 47-1 at 84-89. And the judge rejected the argument in his verdict. Doc. 16 at 6-7.

**Standard of review:** Whether a law is vague implicates due process and is reviewed de novo. *See United States v. Rodebaugh*, 798 F.3d 1281, 1295 (10th Cir. 2015). Factual findings are reviewed for clear error. *Linares*, 60 F.4th at 1247.

**Discussion:** Echoing his sufficiency argument, Cordova insists that he was filming in a lobby. To the extent the area was not a lobby, he argues that this part of the regulation is vague and that he was denied due process. This claim must fail.

First, although the magistrate judge analyzed whether Cordova was in a space covered by subsections (a)-(b) or subsection (c) in addressing vagueness, this Court need not follow that path. *See Zamora*, 97 F.4th at 1213. As discussed in Issue I, the undisputed evidence shows that Cordova filmed in violation of "security regulations, rules, orders, or directives." § 102-74.420. He does not argue the security exception is vague. And based on the exception, the area where he was standing does not matter.

16

17

So this Court does not need to decide whether the word lobby is ambiguous. This approach also accords with the Tenth Circuit's admonition "to avoid deciding constitutional issues where narrower grounds for a decision exist." *United Staes v. Gonzales*, 150 F.3d 1246, 1254 (10th Cir. 1998). In any event, the judge correctly rejected Cordova's challenge, both because Cordova had fair notice that his conduct was punishable and because the regulation was not vague.

A criminal provision is void for vagueness if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). But a defendant may complain about a law's vagueness only as it applies to him. *United States v. Baldwin*, 745 F.3d 1027, 1031 (10th Cir. 2014) (holding § 102-74.385 was not vague). So the question is whether Cordova had fair notice that his conduct was criminal. *Id.*

Critically, Cordova does not "contend he lacked actual notice of the substance of the regulations." *Baldwin*, 745 F.3d at 1034. Nor could he. Federal law was referenced on the posted signs. Doc. 7 at 3 (photos). Officers handed him a copy of the regulation and explained it. Doc. 7 at 4. Cordova read the regulation aloud. Doc. 7 at 4. And he already knew the regulation. Doc. 16 at 3; Gov't Ex. 1 at 06:30-06:34 (stating that the sign was "not a C.F.R." and that he had done his research). "Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Cordova was not trapped—he knew the law yet still planned to "mob right in." Doc. 7 at 2.

Moreover, the magistrate judge found that Cordova knew his conduct was prohibited. *See* Doc. 9 at 2 (finding that Cordova had "knowledge that he was recording in a prohibited area"); Doc. 16 at 7 (finding that Cordova knew "that his conduct in filming beyond the interior glass doors was punishable"). The judge further found that "Cordova knew the SSA and its law enforcement officials interpreted the law as prohibiting filming inside the second set of interior doors where the SSA was conducting business with its customers." Doc. 16 at 7; *see, e.g.*, Gov't Sent'g Ex. 23-1 21:15. Cordova disagreed with that interpretation, but he had "fair notice" that his conduct was criminal. Doc. 16 at 7. He has not challenged the judge's findings, let alone shown clear error. And the findings are fully supported. Doc. 7 at 2-4, 11; Gov't Trial Ex. 1. Cordova's subjective awareness of his potential criminality defeats his vagueness claim.

Cordova's claim also fails because the regulation is not, in fact, vague. For starters, he must overcome the presumption against vagueness. *See United States v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005). And a regulation need not be "a model of clarity." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1254 (10th Cir. 2023).

As discussed in Issue I, the magistrate judge carefully analyzed the regulation and found that the area where Cordova was arrested was not a lobby.[9] Doc. 16 at 2, 5-6. Cordova has not argued that the findings are clearly erroneous. Instead, he offers his own description of the area as a "large waiting room." Doc. 47 at 13. But there is no indication he believed that the interior office was a lobby. Indeed, he referenced nearly

---

[9] Notably, many other regulations concerning photography on government property contain similar, if not identical, phrasing. *See, e.g.*, 39 C.F.R. § 232.1(i) (Postal Service); 38 C.F.R. § 1.218(10), (23) (Veterans Affairs); 46 C.F.R. § 386.17 (Merchant Marine Academy); N.M. Admin. Code 1.5.24.20; D.C. Mun. Regs. Tit. 1, § 1417.

every space covered by § 102-74.420(c) *except* for lobbies. Gov't Trial Ex. 1 at 50:20 ("corridors and auditoriums"); Gov't Trial Ex. 1 at 53:45, 01:33:34 ("foyers"); *see also* Gov't Trial Ex. 1 at 01:58:05 (arguing he could film in publicly accessible areas based on the DHS Memo). The notion that any vagueness in the word lobby violated due process is pure fantasy.

Moreover, while Cordova may disagree with the judge's interpretation, that reading was not so "novel" as to deprive him of fair notice. *United States v. Muskett*, 970 F.3d 1233, 1242-43 (10th Cir. 2020). "[D]ifferent minds may reach different results[.]" *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1367 (10th Cir. 1981). But "[l]anguage inevitably contains ambiguity." *United States v. Solomon*, 95 F.3d 33, 35 (10th Cir. 1996). And "the Constitution does not impose impossible standards of specificity." *StreetMediaGroup*, 79 F.4th at 1253 (cleaned up). Cordova's challenge must fail.

## CONCLUSION

The judgment should be affirmed.

DATED this 3rd day of May, 2024.

Respectfully submitted,

Cole Finegan
United States Attorney

*s/ Jess D. Mekeel*
Jess D. Mekeel
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0408
E-mail: Jess.Mekeel@usdoj.gov

Counsel for Plaintiff-Appellee
United States of America

19

**CERTIFICATE OF SERVICE**

I certify that on May 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

<u>*s/ Kayla Keiter*</u>
Kayla Keiter
U.S. Attorney's Office