IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Criminal Action No. 23-cr-00453-NYW-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    CHRISTOPHER J. CORDOVA,

    Defendant.

## ORDER AFFIRMING CONVICTIONS

On March 20, 2023, the Honorable Michael E. Hegarty convicted Defendant Christopher J. Cordova ("Defendant" or "Mr. Cordova") of two misdemeanor counts: (1) failing to comply with official signs of a prohibitory, regulatory, and directory nature and with lawful direction of Federal police officers and other authorized individuals, in violation of 41 C.F.R. § 102-74.385 ("Count I"); and (2) unlawfully photographing Federal property, in violation of 41 C.F.R. § 102-74.420 ("Count II"). [Doc. 16 at 1]. Mr. Cordova appeals his convictions to this Court.[1] For the reasons set forth in this Order, Defendant's convictions are respectfully **AFFIRMED**.

---

[1] This criminal appeal was originally assigned to the Honorable Robert E. Blackburn, who returned the case on January 26, 2024. [Doc. 41]. After reassignment of the case, this Court adopted the Parties' proposed briefing schedule, [Doc. 45], and held oral argument on June 6, 2024, [Doc. 59].

## BACKGROUND

The following facts are drawn from the record before the Court and are "viewed in the light most favorable to the government." *United States v. Matousek*, 131 F. App'x 641, 644 (10th Cir. 2005).[2]  On August 2, 2022, Mr. Cordova entered an office of the United States Social Security Administration ("SSA") located in Littleton, Colorado. [Doc. 16 at 1; Trial Ex. 1 at 1:20–33; Trial Ex. 12 at 1].[3]  As this was "an ordinary business day, during normal work hours," SSA employees, patrons, and security guards were present in the SSA office. [Doc. 16 at 1]; *see also, e.g.*, [Trial Ex. 1 at 24:45–27:00].

Mr. Cordova used a video camera to film his entry into the building and continued filming for approximately three hours. [Doc. 16 at 2; Trial Ex. 1 at 01:25–03:14:40]. For the first three hours or so, Mr. Cordova remained in an anteroom immediately after the building's exterior doors. [Doc. 16 at 2; Trial Ex. 1 at 01:32–3:14:25]. The walls in this area primarily consisted of plate glass windows, [Doc. 16 at 2; Trial Ex. 1 at 3:57, 10:05, 16:01], which displayed signs warning that photography and video recording are prohibited within the SSA office by federal law and SSA policy, [Doc. 16 at 2; Trial Ex. 3 at 1–7].

This space also contained another set of glass doors that led to an interior room. [Doc. 16 at 2; Trial Ex. 1 at 9:03–59]. The plate glass windows in the anteroom provided

---

[2] Defendant does not challenge Judge Hegarty's findings of fact. *See generally* [Doc. 47]. Accordingly, the Court draws this factual background from Judge Hegarty's Verdict and adds citations to applicable record evidence. *Cf. Bator v. United States*, No. 2:09-cr-00424-LKK, 2010 WL 2044707, at *1 (E.D. Cal. May 20, 2010) (adopting the magistrate judge's statement of facts where the defendant did not dispute the magistrate judge's factual findings), *aff'd*, 421 F. App'x 710 (9th Cir. 2011).

[3] The Parties' designation of the record on appeal includes only the Government's trial and sentencing exhibits. *See* [Doc. 43]. Accordingly, the Court simply refers to the cited exhibits as "Trial Exhibit," without any Party attribution.

"virtually an unobstructed view of the entirety of" the interior room. [Doc. 16 at 2; Trial Ex. 1 at 3:57, 10:05, 16:01]. The interior room—the "office space in which SSA employees do business with the public," [Doc. 16 at 2]—contains chairs for customers to sit and wait for service, [Trial Ex. 1 at 10:33, 21:44], desks, [*id.* at 40:10], and an electronic check-in kiosk, [*id.* at 8:10–8:30], among other items, [Doc. 16 at 2]. The room also has five service window stations, labeled "A" through "E." [*Id.*; Trial Ex. 1 at 12:32–13:10]. Patrons may—and were at the time that Mr. Cordova was filming—approach the service windows and be assisted by SSA employees. [Doc. 16 at 2; Trial Ex. 1 at 22:05–23:34, 23:51–24:00, 30:05–41:30, 1:39:24–1:45:00, 2:00:45–2:01:20].

Mr. Cordova filmed patrons entering and exiting the SSA office, patrons waiting in the SSA office, and patrons being assisted by SSA employees at the service windows. [Doc. 16 at 2; Trial Ex. 1 at 31:10–39:10, 1:14:00–16:08, 2:15:43–16:20]. After filming into the office for over three hours, Mr. Cordova voiced his intent to enter the interior office space. [Doc. 16 at 2; Trial Ex. 1 at 3:14:04–3:14:07]. He had been warned by Department of Homeland Security officers[4] that he would be arrested if he entered the interior room while filming. [Doc. 16 at 2–3; Trial Ex. 1 at 2:22:30–59]. Mr. Cordova entered the SSA office area and was promptly arrested. [Doc. 16 at 3; Trial Ex. 1 at 3:14:27–47].

Defendant was charged via information with one violation of 41 C.F.R. § 102-74.385 and one violation of 41 C.F.R. § 102-74.420. [Doc. 3 at 1–2]. On January 9, 2023, Defendant moved to dismiss the charges against him on constitutional grounds, [Doc. 5], which Judge Hegarty denied, [Doc. 9]. After a bench trial, Mr. Cordova was

---

[4] For purposes of providing additional background context only, DHS officers arrived at the scene approximately an hour after Mr. Cordova arrived at the SSA office. [Trial Ex. 1 at 53:28–53:55].

3

convicted of both counts. [Doc. 14; Doc. 16]. Judge Hegarty subsequently sentenced Defendant to 15 days' imprisonment on Count I and two years' probation on Count II. [Doc. 36 at 2, 5]. He also assessed at $3,000 fine. [*Id.* at 3]. Mr. Cordova now appeals.

## STANDARD OF REVIEW

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The Court reviews the magistrate judge's legal conclusions de novo and his factual findings for clear error. *United States v. Lantis*, 17 F.4th 35, 38 (10th Cir. 2021).

## ANALYSIS

Mr. Cordova raises four issues on appeal, arguing that (1) there was insufficient evidence supporting his conviction for violating 41 U.S.C. § 102-74.420;[5] (2) the magistrate judge erred "in considering subsequent criminal charges arising out of potentially protected First Amendment activity prior to any conviction and without due process" in making his sentencing decision; (3) the magistrate judge erred in ruling that 41 C.F.R. § 102-74.420 is not facially unconstitutional; and (4) the magistrate judge erred

---

[5] In his statement of the issues, Mr. Cordova frames the first issue as "[w]hether the evidence was sufficient to convict Mr. Cordova of count one," [Doc. 47 at 5], which was the count charging a violation of 41 C.F.R. § 102-74.385 (failure to comply with official signs or directives of Federal police officers), *see* [Doc. 3 at 1]. Despite this statement, the Court understands Mr. Cordova's argument to actually challenge the sufficiency of the evidence supporting the Count II conviction for unlawfully photographing on Federal property in violation of 41 U.S.C. § 102-74.420. *See* [Doc. 47 at 7–8 (arguing that there was insufficient evidence to convict Mr. Cordova of violating 41 C.F.R. § 102-74.420)].

4

in holding that 41 C.F.R. § 102-74.420 is not unconstitutionally vague as applied to Defendant. [Doc. 47 at 5]. The Court addresses these issues in turn.

I. **Sufficiency of the Evidence and Regulatory Interpretation**

With respect to Count II, Mr. Cordova was convicted of violating 41 C.F.R. § 102-74.420, which provides:

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of—
>
> (a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> (b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> (c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

41 C.F.R. § 102-74.420(a)–(c). As explained by Judge Hegarty, this regulation "*prohibits* photographing '[s]pace occupied by a tenant agency' without permission of the occupying agency," but "*permits* photographing '[b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes.'" [Doc. 16 at 5 (quoting 41 C.F.R. § 102-74.420(a), (c))]. Judge Hegarty "accept[ed] Mr. Cordova was filming for news purposes," [*id.*], which is a factual finding neither Party has challenged. While Judge Hegarty concluded that the glass anteroom in which Mr. Cordova spent the majority of his time "correspond[ed] with a subsection (c) space" as a "distinct entryway from the outdoors," he further concluded that the interior room was a "distinct and unmistakable office space, corresponding with subsections (a) and (b)," i.e., a "[s]pace occupied by a tenant agency." [*Id.* at 7]; *see also* 41 C.F.R. § 102-74.420(a)–(b). He continued: "Without the SSA's permission to film in

5

this office, which Mr. Cordova did not have,[6] he violated the law." [Doc. 16 at 7 (footnote added)].

Mr. Cordova argues that there was insufficient evidence to support his conviction under 41 C.F.R. § 102-74.420, framing the pertinent issue as "whether the space he entered"—i.e., the interior office space—"should be understood as a lobby" as used in subsection (c). [Doc. 47 at 8]. He challenges "the Court's interpretation of the nature of the space [he] entered," because "the common definition of lobby includes a space used as a waiting room," and "the video introduced at trial shows that the space Mr. Cordova entered into was a waiting room." [*Id.*]. The Court construes this argument as both a challenge to the sufficiency of the evidence with respect to the conviction and a challenge to Judge Hegarty's interpretation of § 102-74.420.

The Government responds that, regardless of whether the interior area is a lobby or not, Defendant's conviction is supported by sufficient evidence because § 102-74.420 prohibits filming where "security regulations, rules, orders, or directives apply," and it is "undisputed that Cordova filmed in violation of security rules, orders, and directives." [Doc. 58 at 13–14 (quoting 41 C.F.R. § 102-74.420)]. In the alternative, the Government argues that the magistrate judge correctly determined that Mr. Cordova was not filming in a lobby. [*Id.* at 15–16].[7]

---

[6] Neither Party challenges this factual finding.

[7] Defendant did not file a reply brief and did not respond to the Government's argument in writing. At oral argument, Defendant argued that relying on the regulation's limiting language about rules, orders, or directives "creates a double jeopardy issue" because he was convicted of failing to comply with official signs under Count I. [Hearing Tr. at 3:3–10]. The Government responded that Defendant's double jeopardy argument has been waived because it was not raised below. [*Id.* at 13:1–17]. The Court need not decide the double jeopardy issue, or decide whether it is appropriately raised now on appeal, to determine that Mr. Cordova's conviction was supported by sufficient evidence.

6

The Court "review[s] de novo the sufficiency of the evidence, viewing all evidence and any reasonable inferences drawn therefrom in the light most favorable to the conviction." *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022). A conviction can be reversed on the basis of insufficient evidence "only when no reasonable [fact finder] could find the defendant guilty beyond a reasonable doubt." *Id.* (quotation omitted). The Court also reviews Judge Hegarty's interpretation of the regulation de novo. *United States v. Doby*, 928 F.3d 1199, 1202 (10th Cir. 2019).

Regulations are construed and interpreted in the same manner as statutes. *Mitchell v. Commissioner*, 775 F.3d 1243, 1249 (10th Cir. 2015). The Court's interpretation of the regulation begins with its plain language, and if the words of the regulation are clear, the Court applies it as written. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017); *Nat. Res. Def. Council v. McCarthy*, 993 F.3d 1243, 1251 (10th Cir. 2021). Courts may turn to dictionaries to ascertain the ordinary meaning of words or phrases. *Ailon-Ailon*, 875 F.3d at 1338; *United States v. Lesh*, 107 F.4th 1239, 1248 n.10 (10th Cir. 2024).

"Lobby" is defined as "a corridor or hall connected with a larger room or series of rooms and used as a passageway or waiting room." *Lobby*, Webster's Third New Int'l Dictionary 1326 (3d ed. 1993). Like Judge Hegarty, the Court finds that the vestibule immediately after the SSA building's exterior doors, which served as an entryway into the SSA office building, may reasonably be deemed a "lobby." But the Court also agrees with Judge Hegarty that the interior room that Mr. Cordova later entered while filming, leading to his arrest, is not a "lobby" as used in the regulation. While Defendant argues that the video evidence "shows that the space Mr. Cordova entered into was a waiting room," and

thus a lobby, *see* [Doc. 47 at 8], this argument uses too broad a brush and ignores pertinent, unchallenged facts found by Judge Hegarty. As Judge Hegarty noted, the interior room is an area where customers conduct business with the SSA. *See, e.g.*, [Trial Ex. 1 at 22:05–23:34, 23:51–24:00, 30:05–41:30, 1:39:24–1:45:00, 2:00:45–2:01:20 (numerous customers being helped at the service windows)]. The space is not just a "waiting room"—it is a room in which official government business is conducted, and it is not a "lobby" using the word's plain meaning.

This conclusion is supported by the remainder of subsection (c) and related regulatory language. Subsection (c) permits filming not only in lobbies, but in building entrances, foyers, corridors, or auditoriums. "Under the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.'" *McDonnell v. United States*, 579 U.S. 550, 568–69 (2016) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). That canon directs that "a word is given more precise content by the neighboring words with which it is associated," *United States v. Williams*, 553 U.S. 285, 294 (2008), and a word "should be read in a similar manner to its companions," *Dubin v. United States*, 599 U.S. 110, 126 (2023). "Lobby" is accompanied in subsection (c) by several other words that similarly describe public common-area spaces, particularly entryway spaces. *See Auditorium*, Webster's Third New Int'l Dictionary 143 (3d ed. 1993) ("the part of a [usually] public building (as a theater) assigned to the audience"); *Corridor*, Webster's Third New Int'l Dictionary 512 (3d ed. 1993) ("a [usually] covered passageway; *esp* : one into which compartments or rooms open (as in a hotel or on certain types of trains)"); *Entrance*, Webster's Third New Int'l Dictionary 758 (3d ed. 1993) ("the means or place for physical entering (as a door, gate, or passage)"); *Foyer*, Webster's Third New Int'l

8

Dictionary 900 (3d ed. 1993) ("an anteroom or lobby esp. of a theater, library, or other public building").  These terms do not describe an area in which patrons would meet with federal agency officials to conduct business, which informs the Court that "lobby" should not be ascribed such a meaning, either.

Furthermore, "[i]n interpreting a regulatory provision," a court "examine[s] the text of the regulation as a whole, reconciling the section in question with sections related to it."  *Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006).  Federal regulations governing conduct on federal property also provide that "[a]ll persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that . . . [u]nreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, *offices*, elevators, stairways, or parking lots."  41 C.F.R. § 102-74.390(b) (emphasis added).  The inclusion of "offices" in this regulation shows that "lobbies" are distinct from "offices"—both in § 102-74.390 *and* in § 102-74.420.  *See United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J., concurring) (explaining that the presumption of consistent usage is a "rule of thumb that a term generally means the same thing each time it is used").  It also evinces an intent to *not* include "offices" in § 102-74.420(c)'s list of permissible filming locations.  *See Seneca-Cayuga Tribe v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 (10th Cir. 2003) (discussing the *expressio unius est exclusio alterius* canon and explaining that "the notion is one of negative implication:  the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced" (quotation omitted)).

In sum, the Court construes "lobby" to mean an area that may be used as a waiting room, but not an area that operates as an office space or in which people conduct business. Moreover, the Court concludes that there is ample evidence supporting the conclusion the interior room Mr. Cordova entered while filming is an office space, not a "lobby," and is not a permissible filming location under § 102-74.420(c). Mr. Cordova's conviction of Count II is supported by sufficient evidence.

## II.  Due Process Violation

Next, Defendant argues that his due process rights were violated in sentencing because he believes Judge Hegarty considered Mr. Cordova's then-recent arrests in his sentencing decision. [Doc. 47 at 8–10]. Mr. Cordova's argument relies, at least in part, on the Government's change in sentencing position: the Government originally asked for 160 hours of community service and a $5,000 fine, *see* [Doc. 23 at 1], but later amended its position to recommend a sentence of 20 days' incarceration and a $5,000 fine after Defendant was arrested for "conduct mirroring the crimes he committed at the Social Security office on August 2, 2022," [Doc. 26 at 2].[8]  Defendant appears to take the position that because the Government only asked for incarceration based on Mr. Cordova's then-recent arrests, and because Judge Hegarty ultimately sentenced Defendant to 15 days' incarceration on Count I, Judge Hegarty *must* have considered and relied upon this post-conviction conduct in making his sentencing decision. [Doc. 47 at 8–9].

The Government responds first that this argument is waived because Defendant did not raise a Rule 32 objection at sentencing, such that the Court can only conduct

---

[8] Defendant also notes that the Government referenced a second recent arrest, arising out of similar conduct, at the sentencing hearing. [Doc. 47 at 8; Doc. 47-1 at 110–11, ll. 5:20–6:1].

10

plain-error review. [Doc. 58 at 16–17]. And because Mr. Cordova has not raised any plain-error argument on appeal, the Government asserts that he has forfeited the issue. [*Id.* at 17]. At oral argument, Mr. Cordova insisted that the issue "was discussed repeatedly" at sentencing and that he had objected "to the inappropriateness of" considering the arrests in sentencing, [Hearing Tr. at 12:6–11],[9] but he did not expressly point the Court to any Rule 32 objection or any express request for Judge Hegarty to definitively rule on the Parties' dispute.

The Court respectfully agrees with the Government. Rule 32 of the Federal Rules of Criminal Procedure provides that, at sentencing, the court "must—for any . . . controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). If a party does not object to a court's failure to rule on a disputed matter, the party "forfeits the issue." *United States v. Otuonye*, 995 F.3d 1191, 1213 (10th Cir. 2021).

At sentencing, the Government mentioned Defendant's "post-arrest conduct" as a relevant sentencing consideration, arguing that it shows a "pattern of caring more about fame and YouTube viewers than the people that [Mr. Cordova] was harming" and a lack of remorse. [Doc. 47-1 at 108–09 ll. 3:13–16, 4:12–17].[10] Defendant objected to the consideration of these subsequent arrests on First and Fifth Amendment grounds,

---

[9] The Court cites to a preliminary nonpublic version of the oral argument transcript. Accordingly, there may be some variations with respect to page numbers, line numbers, or specific language should an official transcript be ordered and prepared.

[10] The bench trial and sentencing transcripts were filed together as a single attachment to Defendant's opening brief. *See* [Doc. 47-1]. For this reason, the Court cites to both the page number assigned by the CM/ECF system and the page and line numbers appearing on the cited transcript.

11

asserting that he has a constitutional right to film and consideration of these arrests would violate his due process rights because he had not yet had an opportunity to raise a First Amendment defense to those charges.  [*Id.* at 117–18 ll. 12:15–21, 13:6–17; *id.* at 120–21 ll. 15:25–16:2].  But Judge Hegarty did not definitively rule on the disputed issue or say whether he would consider the additional arrests in fashioning a sentence, and Defendant did not object to the lack of ruling on this disputed issue under Rule 32.  *See generally* [*id.*].  He thus "forfeit[ed] the issue."  *Otuonye*, 995 F.3d at 1213; *see also United States v. Fisher*, 805 F.3d 982, 992 (10th Cir. 2015) (finding forfeiture where the defendant "never invoked Rule 32 before the district court").

Absent an express Rule 32 objection, the Court's review is "limited to determining whether [the magistrate judge's] alleged failure to make a specific finding amounted to plain error."  *United States v. Williamson*, 53 F.3d 1500, 1527 (10th Cir. 1995).  But "[w]hen an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal," the Tenth Circuit "ordinarily deem[s] the issue waived (rather than merely forfeited) and decline[s] to review the issue at all—for plain error or otherwise."  *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019); *see also United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the [magistrate judge]." (ellipses in original) (quotation omitted)).  Defendant does not raise a plain-error argument in his brief, *see* [Doc. 47 at 8–10], and neither filed a reply brief nor argued plain error at the hearing.  The Court deems the issue waived.  *See Lesh*, 107 F.4th at 1244.[11]

---

[11] Even if the Court were to review Judge Hegarty's sentencing decision for plain error, the Court observes none here.  "Plain error occurs when there is (1) error, (2) that is plain,

### III.     Whether 41 C.F.R. § 102-74.420 is Facially Unconstitutional

In the underlying proceedings, Defendant moved to dismiss Count II on the basis that 41 C.F.R. § 102-74.420 is facially unconstitutional. [Doc. 5 at 2–4]. Judge Hegarty denied the motion to dismiss, finding that Mr. Cordova's arrest "was pursuant to a constitutional exercise of government regulation." [Doc. 9 at 1]. Defendant raises the issue again on appeal. [Doc. 47 at 10]. "Challenges to the constitutionality of a statute are reviewed de novo." *United States v. Lynch*, 881 F.3d 812, 817 (10th Cir. 2018).

"The extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content-neutral." *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999). With respect to a nonpublic forum like the SSA office,[12] "the government has much greater latitude to restrict protected speech." *Id.* at 1287. "Access to a nonpublic forum . . . can be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800

---

which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 695 F.3d 1125, 1130 (10th Cir. 2012) (quotation omitted). The maximum term of imprisonment for each count was 30 days' imprisonment, 41 C.F.R. § 102-74.450, and a court is not bound to the government's recommended sentence and may impose a sentence greater than what the government requests, *see United States v. Al-Taweel*, 105 F. App'x 972, 975 (10th Cir. 2004) ("While a prosecutor may make sentencing recommendations, such recommendations are only advisory and the court is not bound by them."). There is simply no record evidence that Judge Hegarty considered Mr. Cordova's subsequent arrests in determining the sentence, and the Court declines to adopt Defendant's speculation that because the Government asked for incarceration due to the subsequent arrests, and because Judge Hegarty ultimately sentenced him to a term of incarceration, Judge Hegarty *must* have considered that conduct in sentencing.

[12] The Parties agree that the SSA office is a nonpublic forum. *See* [Doc. 47 at 12; Doc. 58 at 20–21].

(1985) (cleaned up); see also *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682 (1998) ("To be consistent with the First Amendment, the exclusion of a speaker from a nonpublic forum must not be based on the speaker's viewpoint and must otherwise be reasonable in light of the purpose of the property.").

"In the context of a First Amendment challenge like this one, a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Streett*, 83 F.4th 842, 852 (10th Cir. 2023) (quotation omitted). "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the regulation] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 7 (1988)).

Defendant argues that the regulation is facially unconstitutional under the First Amendment because it is a "broad regulation that applies to all public buildings" and "[i]t is unclear what purpose is served by the forum because each forum may be wildly different." [Doc. 47 at 12]. He also asserts that, "opposed to other forms of expression, the act of recording is silent and non-disruptive," such that the regulation "is not reasonable as there is no defined purpose served through this restriction as applied to all public buildings." [*Id.*].[13] At oral argument, he classified his challenge as an overbreadth challenge. *See* [Hearing Tr. at 6:2–20, 7:18–20, 8:7–8].

Defendant's argument presupposes overbreadth because, in his view, the regulation applies to too wide a range of properties, and there cannot possibly be a shared

---

[13] Defendant does not challenge the viewpoint neutrality of the regulation. *See generally* [Doc. 47].

purpose among those properties that would render the photography restriction reasonable. The Court respectfully disagrees. The regulation does not restrict speech in "all public buildings" like Defendant suggests, but in "property under the authority of [the General Services Administration]" in spaces occupied by a tenant agency. 41 C.F.R. §§ 102-74.365, 102-74.420(a)–(b). Thus, it applies to spaces in which federal agencies operate. And despite Defendant's suggestion that the properties covered by the regulation can share no common purpose, their shared purpose is simple: to conduct the business of the federal government. *Cf. id.* § 102-74.10 ("Executive agencies must manage, operate and maintain Government-owned and leased buildings in a manner that provides for quality space and services consistent with their operational needs and accomplishes overall Government objectives."). The government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836 (1976).

A restriction on expressive activity in a nonpublic forum "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683 (1992) (quotation omitted). "The . . . regulations in § 102-74, particularly subpart C, 'identify a core of conduct that may constitutionally be controlled on federal property in order to preserve the normal functioning of federal facilities.'" *United States v. Zagorovskaya*, No. 2:13-cr-00583-PA, 2014 WL 12665158, at *7 (C.D. Cal. Oct. 8, 2014) (quoting *United States v. Stansell*, 847 F.2d 609, 614 (9th Cir. 1988)), *aff'd*, 628 F. App'x 503 (9th Cir. 2015). Restricting photography in agency-occupied office spaces, in an effort to prevent disruption of the agency's day-to-day operations, is reasonable because filming within those spaces may

15

distract or interfere with employees or customers, prevent or hinder the exchange of sensitive information, or otherwise impede the agency's ability to conduct business. *Cf. Mocek v. City of Albuquerque*, No. 11-cv-01009-JB-KBM, 2013 WL 312881, at *54–55 (D.N.M. Jan. 14, 2013) (concluding that a restriction on filming at a TSA airport screening checkpoint was a reasonable restriction to prevent disruption to the TSA's operations, as filming could have a "disruptive effect" by requiring TSA agents to divert their attention away from their screening responsibilities); *cf. United States v. Gileno*, 350 F. Supp. 3d 910, 918 (C.D. Cal. 2018) (finding that filming restriction was reasonable in federal courthouse because the "[filming] ban served a legitimate security need"). While Defendant argues that "the act of recording is silent and non-disruptive," [Doc. 47 at 12], this blanket assertion is belied by his conduct in this case, which *did* cause disruption in the SSA office, diverting the attention of security guards and requiring the arrival of additional security guards and police officers, not to mention causing a commotion that was likely distracting and may have been distressing to SSA employees and patrons. The restriction on filming is reasonable in light of the purpose of the property and the regulation and Defendant has not demonstrated that the regulation is overbroad or facially unconstitutional.

**IV.     Whether 41 C.F.R. § 102-74.420 is Unconstitutionally Vague**

Finally, Mr. Cordova challenges Judge Hegarty's ruling that 41 C.F.R. § 102-74.420 is not vague. *See* [Doc. 5 at 4–6 (Defendant arguing in his Motion to Dismiss that the regulation is vague as applied to him); Doc. 9 at 2 (Judge Hegarty rejecting this argument)]; *see also* [Doc. 16 at 6–7 (Judge Hegarty rejecting the vagueness argument in the Verdict)]. "Whether a statute has been rendered unconstitutionally vague in its

application is an issue of law and the standard of review is therefore de novo." *United States v. Agnew*, 931 F.2d 1397, 1403 (10th Cir. 1991).

The void-for-vagueness doctrine "means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker v. Levy*, 417 U.S. 733, 757 (1974) (quotation omitted). "A statute is impermissibly vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) (quotation omitted). A law can be void on its face or void as applied to a particular party in a particular set of circumstances. *Lesh*, 107 F.4th at 1246. An as-applied challenge like Mr. Cordova's[14] "tests the application of th[e] restriction to the facts of a plaintiff's concrete case." *Id.*

"When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." *United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir. 2000). "The strong presumptive validity that attaches to an Act of Congress has led [the Supreme] Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963); *United States v. Pinelli*, 890 F.2d 1461, 1471 (10th Cir. 1989).

---

[14] *See* [Doc. 47 at 13 (Defendant arguing that the relevant question is "whether th[e] carve out" in 41 C.F.R. § 102-74.42014 "applies to [Defendant]"); *id.* at 14 ("[I]t is unclear from the language of th[e] regulation whether Defendant's conduct was specifically exempted or not.")].

Defendant argues that 41 C.F.R. § 102-74.420 is unconstitutionally vague as applied to him because a reasonable person may understand the term "lobb[y]" to include the SSA office's interior room, as a "lobby includes an area inside the entrance of a public building." [Doc. 47 at 13]. He argues that the regulation's language made it unclear whether his conduct was prohibited, and so he was "denied fair notice of the law's demands." [*Id.* at 14].

The Court is respectfully unpersuaded by this argument. A person of ordinary intelligence in Mr. Cordova's position would reasonably understand that his conduct was prohibited. First, with respect to the interior office, Mr. Cordova spent three hours watching SSA employees meet with and assist patrons, clearly establishing that the interior office is a space in which official government business is (and was being) conducted. Insofar as he argues that a person could reasonably view the interior room as a lobby, any confusion associated with the nature of the space is significantly minimized by the fact that there were numerous signs clearly stating that filming was prohibited "*inside SSA offices*"—giving further notice that the interior room was an office, not a lobby. *See* [Trial Ex. 3 at 2–3]. Indeed, Judge Hegarty found—and Defendant has not challenged—that "Mr. Cordova knew the SSA and its law enforcement officials interpreted the law as prohibiting filming inside the second set of interior doors where the SSA was conducting business with its customers" and that he had "fair notice of the language of the regulation, and that his conduct would be punishable under the Government's interpretation of it." [Doc. 16 at 7].

"[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781,

18

794 (1989). A regulation "need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds," *United States v. Hager*, 721 F.3d 167, 183 (4th Cir. 2013), and modest difficulty in categorizing marginal conduct is insufficient to overcome the presumption of validity and render the regulation unconstitutionally vague, *Saffo*, 227 F.3d at 1270; *Nat'l Dairy Prod. Corp.*, 372 U.S. at 32. The regulation, "especially when read in context with the entire regulatory scheme, describe[s] with sufficient definitiveness the range of conduct that may be constitutionally controlled on federal property in order to preserve the normal functioning of federal facilities." *United States v. Cruscial*, No. 3:18-cr-00465-JR, 2019 WL 1087150, at *4 (D. Or. Mar. 7, 2019). Under the circumstances of this case, the Court concludes that the regulation gave Mr. Cordova adequate notice that his conduct was prohibited and was therefore not unconstitutionally vague.

Finding no error, the Court affirms Mr. Cordova's convictions.

### CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1)   Christopher J. Cordova's convictions are **AFFIRMED**; and

(2)   The case is remanded back to Chief United States Magistrate Judge Michael E. Hegarty for execution of the sentence.

DATED: October 15, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge